**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RICHARD ROCHE,
:
: Civil Action No. 08-2073 (NLH)
    Petitioner,   :
:
    v.            :        **O P I N I O N**
:
MICHELLE RICCI, et al.,
:
    Respondents.  :

**APPEARANCES:**

Richard Roche, <u>Pro Se</u>
#301406/135736
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

Roseann A. Finn
Office of the Camden County Prosecutor
25 North Fifth Street
Camden, NJ 08102
Attorney for Respondents

**HILLMAN, District Judge**

Petitioner Richard Roche, a prisoner currently confined at the New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondents are Administrator Michelle Ricci and the Attorney General of New Jersey.

For the reasons stated herein, the petition must be denied.

**BACKGROUND**

**A.   Factual Background**

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division ("Appellate Division").[1]

> The indictment was based upon the State's proffer that defendant traveled from Puerto Rico to Camden because he was hired to kill Eric Coleman, a police informant.  Defendant was paid $5000.  Coleman was shot on December 24, 1994, and died of multiple gun shot wounds.
>
> On March 24, 1998, defendant entered into a negotiated plea agreement with the State.  In exchange for defendant's guilty plea to first-degree murder (count two), the State agreed to dismiss the other counts in the indictment, and to recommend a sentence of life imprisonment with a thirty-year parole ineligibility period, to be served concurrently with defendant's federal sentence, which had been imposed on March 18, 1997, on charges pursuant to the Racketeer Influenced and Corrupt Organizations Act, . . . .  The State also agreed that it would not object to defendant's request to serve his state sentence in federal prison, although no affirmative effort to enable defendant to do so was offered by the prosecutor.  The plea agreement executed by defendant included the following comment: "State has no objection to sentence being served in Federal Bureau of Prison[s] and shall not take any affirmative application [sic] for the sentence to be served in the State prison system."

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

> Defendant provided the factual basis for his guilty plea, stating that on December 24, 1994, he stood in front of Eric Coleman, and, with the purpose to kill him, shot him as many as five or six times. There was no dispute that Coleman died as a result of his gunshot wounds. The trial court imposed the recommended sentence as set forth in the plea agreement, which was affirmed on appeal. After sentencing, by way of correspondence with federal prison authorities, defendant learned he was ineligible to be transferred to federal prison until the completion of his New Jersey sentence.

See Respondents' Appendix ("Ra") 15 (internal citations omitted).

**B.   Procedural History**

On February 15, 1996, a Camden County Grand Jury returned an indictment charging defendant with five counts of violating New Jersey state law: conspiracy to commit first-degree murder (count one); first-degree murder (count two); capital murder (count three); second-degree possession of a weapon for an unlawful purpose (count four); and third-degree unlawful possession of a weapon (count five).

As noted, Petitioner entered into a negotiated plea agreement with the State on March 24, 1998, and on May 8, 1998, was sentenced pursuant to the agreement. After an appeal to the Appellate Division, Petitioner's sentence was affirmed on March 14, 2002.

Petitioner filed a state court petition for post-conviction relief (PCR) on or about April 4, 2002. After hearing the arguments the trial court denied relief on July 15, 2005. The Appellate Division affirmed the denial of relief on June 19,

2007.  The New Jersey Supreme Court denied certification to review the matter on September 26, 2007.

This petition, filed on April 24, 2008, followed. Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), on June 12, 2008.  An Order to Answer was issued and Respondent filed a response to the petition on February 10, 2009. Plaintiff filed a motion for an evidentiary hearing on July 14, 2008, which remains pending.

**C.   Petitioner's Claims**

Petitioner cites four grounds for relief:

(1)   Denial of effective assistance of counsel.

(2)   Conviction obtained by a plea of guilty which was unlawfully induced and not made voluntarily with understanding of the nature of the consequences of the plea.

(3)   Ineffective assistance of appellate counsel on direct appeal.

(4)   Denial of due process- the cumulative effect of Petitioner's ineffective counsel claims requires that he be granted an evidentiary hearing.

(Petition, ¶ 12).

It appears that the claims have been exhausted in the state courts.  Nonetheless, this Court finds that Petitioner's claims are clearly meritless.  Thus, the petition will be denied.[2]

---

[2] Although a petition for writ of habeas corpus may not be granted if Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding Petitioner's failure to exhaust his state court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42

**DISCUSSION**

**A.   Standards Governing Petitioner's Claims.**

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially

---

(3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II).  A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter).  Id. at 407-09.  To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable.  See id. at 409.  In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts.  See Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court

6

does not contradict relevant Supreme Court precedent." <u>Priester v. Vaughn</u>, 382 F.3d 394, 398 (3d Cir. 2004) (citing <u>Early v. Packer</u>, 537 U.S. 3 (2002); <u>Woodford v. Visciotti</u>, 537 U.S. 19 (2002)).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. <u>See</u> <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United States v. Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert. denied</u>, 399 U.S. 912 (1970).

**B.   Ineffective Assistance of Counsel Claims**

Petitioner alleges that his trial counsel was ineffective because counsel "fail[ed] to properly investigate whether [Petitioner] could serve [his] state sentence in federal prison." Pet., ¶ 12(A). As to appellate counsel, Petitioner claims that appellate counsel was ineffective for failing to raise, on direct appeal, the ineffectiveness of trial counsel, and prosecutorial misconduct for misleading Petitioner into believing the State would affirmatively assist him in transferring him to federal prison. Pet., ¶ 12(C).

The "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct.  See id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir.), cert. denied, 534 U.S. 973 (2001).  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Strickland, 466 U.S. at 688.  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."  Id.

If able to demonstrate deficient performance by counsel, the petitioner must also show that counsel's substandard performance actually prejudiced his defense.  See Strickland, 466 U.S. at 687.  Prejudice is shown if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  The reviewing court must evaluate the

effect of any errors in light of the totality of the evidence. See id. at 695-96. Thus, the petitioner must establish both deficient performance and resulting prejudice in order to state an ineffective assistance of counsel claim. See id. at 697; see also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

The Strickland standards also apply to guilty pleas alleged to be the result of ineffective assistance of counsel. See Hill v. Lockhart, 474 U.S. 52 (1985); Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir.), cert. denied, 484 U.S. 863 (1987). To prevail on an ineffective assistance claim in a guilty plea context, a petitioner must show: (1) counsel's performance relating to the plea was deficient; (2) the deficient performance prejudiced Petitioner's case, because there was a reasonable probability that but for counsel's errors, the defendant would not have pled guilty, and would have gone to trial. See Strickland, 466 U.S. at 687-88; Hill, 474 U.S. at 59.

Finally, the Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right. See Evitts v. Lucey, 469 U.S. 387 (1985). Claims of ineffective assistance of appellate counsel are evaluated under the Strickland standard. See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004); Wright v. Vaughn, 2004 WL 1687865 at *6, n.10 (E.D. Pa. July 26, 2004). Appellate counsel does not have a duty

9

to advance every nonfrivolous argument that could be made, see Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

Moreover, in order to prevail on a claim that appellate counsel was ineffective, a petitioner must show not only that counsel's performance fell below an objective standard of reasonableness, but also that there was a reasonable probability, but for counsel's deficiency in raising the arguments on appeal, that the conviction would have been reversed on appeal.  See Buehl v. Vaughn, 166 F.3d 163, 173-74 (3d Cir.), cert. dismissed, 527 U.S. 1050 (1999).

In the case before this Court, the PCR judge discussed this claim, and found against Petitioner.  The PCR judge held in his oral opinion denying the PCR motion:

> Really this whole argument of ineffective assistance of counsel does not fit into the claim here and boils down to Roche's thought that he would be able to serve his sentence in a federal prison instead of a New Jersey prison and he could have raised that on direct appeal and didn't do that.
>
> Moreover, counsel had no control- trial counsel had no control over where he served his sentence; nor, does the plea agreement, the plea transcript or sentencing transcript reflect any promises or representations his counsel, [or] by the prosecutor . . . or, by Judge Eynon, that Roche would serve his New Jersey sentence in federal prison.

See Rta 5 at pp. 20-21. The PCR judge continued to review the plea form on the record, pointing out Petitioner's answers to questions, and concluded that "any claim that counsel's performance was deficient because Roche couldn't serve his New Jersey sentence in a federal prison instead of state prison falls short of being an error so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment." See Rta 5 at pp. 21-22 (citing Fritz and Strickland). The PCR judge also held that Petitioner did not meet the second prong of Strickland because he was not actually prejudiced by counsel's alleged insufficient performance, because he did not assert that he would have gone to trial and been acquitted of murder. See Rta 5 at p. 22.

The Appellate Division also examined Petitioner's ineffective assistance of counsel claims on Petitioner's appeal of his PCR hearing, and held:

> Although defendant lists various arguments, the essence of his PCR petition is that counsel's assistance was ineffective because counsel failed to determine, with certainty, whether defendant could serve his State sentence in federal prison. Defendant contends that this error requires that he be permitted to retract his plea.
>
> To establish an ineffective assistance of counsel claim, a defendant must satisfy the two-prong test formulated in Strickland v. Washington, 466 U.S. 668, 687 (1984), and United States v. Cronic, 466 U.S. 648, 657-58 (1984), which the Supreme Court of New Jersey adopted in State v. Fritz, 105 N.J. 42, 58 (1987). First, a defendant must demonstrate that his counselor's performance was deficient by "showing that

11

counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, supra, 466 U.S. at 687. Second, a defendant must show "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" State v. Marshall, 148 N.J. 89, 157 (quoting Strickland, supra, 466 U.S. at 694, cert. denied, 522 U.S. 850 (1997).

"The burden to prove that incompetence of counsel had a prejudicial effect upon the outcome of the proceeding is squarely on the defendant." As noted in Strickland:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]

Strickland, supra, 466 U.S. at 689 (internal citation omitted).

It is conceded that both the prosecutor and trial counsel were unaware the Federal Bureau of Prisons would decline defendant's request for transfer to the federal system. Nevertheless, such a lack of understanding was not an error "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

12

See Ra15 at pp. 5-7.  The Appellate Division went on to note that there was no prejudicial effect by counsel because "[n]o evidence supports the proposition that defendant's acceptance of the plea offered by the State, which dropped several charges in the indictment and avoided the death penalty, resulted solely because defendant believed he would be housed in federal prison."  See Rta15 at p. 8.

In this case, a review of the record shows that counsel was competent and did not perform deficiently.  As set forth in the record, especially the oral decision of the PCR judge (Rta 5) and the sentencing transcript (Rta 1), Petitioner's plea was knowing, voluntary, and intelligent.  It is unlikely that, facing the death penalty, Petitioner would have gone to trial, especially with the evidence collected that implicated him- including a cooperating witness to whom Petitioner admitted shooting the victim because he was a "rat."  See Ra13 at appendix p. Da17.  Nor does Petitioner demonstrate a violation of his constitutional rights by appellate counsel, as Petitioner has not shown that appellate counsel was defective or that Petitioner would have been successful with his appeal had appellate counsel raised the claims advanced by Petitioner.[3]

---

[3] Additionally, the Court notes that "concurrent sentences imposed by state judges are nothing more than recommendations to federal officials. Those officials remain free to turn those concurrent sentences into consecutive sentences by

Therefore, as the record reveals that the state courts relied on the Strickland standard in evaluating Petitioner's ineffective counsel claims, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the decisions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Petitioner's claims will be denied.

## C. Unknowing and Involuntary Plea Claim

In Ground Two of his Petition, Petitioner argues that he should be permitted to withdraw his guilty plea and go to trial

---

refusing to accept the state prisoner until the completion of the state sentence and refusing to credit the time the prisoner spent in state custody." Reyes v. Samuels, 2007 WL 655487 (D.N.J. 2007) (Hillman, J.)(quoting Del Guzzi v. United States, 980 F.2d 1269, 1272-73 (9th Cir. 1992)).  Thus, Petitioner's attempt to "place the blame" for his current sentencing situation on ineffective assistance of counsel has no merit.  Petitioner's counsel did the best he could in the situation; he was able to persuade the trial judge and the State to formally add into the plea agreement the clause asserting that "State has no objection to sentence being served in Federal Bureau of Prisons . . . ." (Ra5 at p. 3).  The trial judge imposed the recommended sentence as set forth in the plea agreement.  It was the federal authorities who refused the request, with no interference by the State.  As noted in the quote above in Reyes and Del Guzzi, the federal authorities were acting within the scope of the law in so refusing the request.  Thus, the outcome was a simple function of the operation of two autonomous sovereigns: the federal government and the State.

on the murder charge because he did not get the benefit of the plea bargain, he entered the plea unknowingly and involuntarily, and the factual statement in support of the plea is insufficient. Pet., ¶ 12(B).

The PCR judge denied Petitioner's claim that there was no factual basis for the plea, finding the claim "unfounded and, frankly, scurrilous" and noting that Petitioner "fail[ed] to make a prima facie showing of any other grounds [besided ineffective assistance of counsel] for post-conviction relief." Rta5 at p. 25. The Appellate Division dismissed Petitioner's claim as "lacking in sufficient merit to warrant discussion in the opinion." Ra15 at p. 8.

This Court agrees with the state courts that Petitioner's claims regarding his guilty plea are without merit. A review of the plea transcript (Rta 1) demonstrates that Petitioner entered the plea knowing and voluntarily, and that the factual statement in support of the plea was sufficient. Petitioner was provided a Spanish interpreter. Upon counsel's questioning, Petitioner admitted shooting the victim five or six times with a pistol. Petitioner stated that he understood everything, understood the sentence, and understood that he was waiving his right to trial.

Thus, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the decisions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable

15

application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Based on a review of the record, this Court finds no basis to grant habeas relief on this claim.

### D.   **Due Process Claim**

In Ground Four of his Petition, Petitioner argues that he should be granted an evidentiary post-conviction hearing because of trial and appellate counsel's ineffectiveness.  Petitioner claims that the cumulative effect of the ineffectiveness of counsel requires a hearing to comply with due process.  Pet., ¶ 12(D).  Both the PCR judge and the Appellate Division rejected Petitioner's request for an evidentiary hearing.  See Rta5 at p. 25, Ra15 at p. 8.

It is well-established that the violation of a right created by state law is not cognizable as a basis for federal habeas relief.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting Lewis v. Jeffers, 497 U.S. 764, 680 (1990))).  Nonetheless, Petitioner has failed to establish that he met the state law threshold for an evidentiary hearing.  See State v. Preciose, 129 N.J. 451 (1992) (setting forth the petitioner's burden to establish a prima facie case in

order to obtain an evidentiary hearing).  As Preciose sets forth, an evidentiary hearing is required if there is a dispute of fact respecting matters that are not on the record.  In this case, a review of the record reveals that the state courts correctly applied the state law, and the federal Strickland standard, in denying the evidentiary hearing.  (Ra15, Rta5).

**E.    Motion for Evidentiary Hearing**

On June 2, 2008, Petitioner paid the $5.00 filing fee in this matter.  On June 4, 2008, Petitioner filed an application to proceed in forma pauperis ("IFP")(docket entry 3).  Based on Petitioner's prison account statement, this Court denied the IFP application on June 12, 2008 (docket entry 4).

On July 14, 2008, Petitioner filed a motion for an evidentiary hearing (docket entry 6).  In his motion, Petitioner asks for reconsideration of this Court's June 12, 2008 order denying his IFP application; specifically, Petitioner notes that his prison account rose over $200 because he was saving up to buy a television, and that the money was afterwards taken out for the television, and he is indigent.  Petitioner requests indigent status so that he could apply for counsel.

Given the disposition of this matter, this Court finds Petitioner's request for IFP status and request for counsel moot.  If Petitioner chooses to appeal this Court's decision, he may apply to proceed IFP on appeal in this Court, pursuant to Rule 24

of the Federal Rules of Appellate Procedure, and this Court will revisit his request.[4]

### **CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate

---

[4] Rule 24 of the Federal Rules of Appellate Procedure states:

> (a) Leave to Proceed In Forma Pauperis
> (1) Motion in the District Court. Except as stated in Rule 24(a)(3), a party to a district court action who desires to appeal in forma pauperis must file a motion in the district court. The party must attach an affidavit that:
>    (A) shows in detail prescribed by Form 4 of the Appendix of Forms, the party's inability to pay or to give security for fees and costs;
>    (B) claims an entitlement to redress; and
>    (C) states the issues that the party intends to present on appeal.
> (2) Action on Motion. If the district court grants the motion, the party may proceed on appeal without prepaying or giving security for fees and costs, unless a statute provides otherwise. If the district court denies the motion, it must state its reasons in writing.

to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, no certificate of appealability will issue.

### CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, is denied. The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253.

An appropriate Order accompanies this Opinion.

      /s/ NOEL L. HILLMAN
      NOEL L. HILLMAN
      United States District Judge

Dated: July 16, 2009
At Camden, New Jersey